## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RAJENDRA PRASAD,** | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No. RDB-18-3946** |
| **v.** | * | |
| **LOUIS DEJOY,** | * | |
| *Postmaster General,*[1] | | |
| | * | |
| **Defendant.** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiff Rajendra Prasad ("Plaintiff" or "Prasad") brings this employment discrimination action against the Postmaster General of the United States Postal Service ("Defendant" or "USPS"), Prasad's current employer.  Prasad alleges that he was unlawfully discriminated against based on his race, religion, national origin, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*  Presently pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, Alternatively, for Summary Judgment.  (ECF No. 33.)  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, Alternatively, for Summary Judgment

---

[1] Although this case was originally filed against Megan Brennan in her capacity as United States Postmaster General, the Court substitutes her successor, Louis DeJoy, in her place. *See* Fed. R. Civ. P. 25(d). The Clerk shall amend the docket, consistent with this case caption, to reflect the substitution.

(ECF No. 33), treated as a Motion to Dismiss, shall be GRANTED.  Plaintiff's Amended Complaint (ECF No. 30) shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Plaintiff Prasad has been employed by the USPS since 1988.  (Am. Compl. ¶¶ 1, 10, ECF No. 30.)  Prasad is of Asiatic-Indian descent, Hindu religion, and was born in India in 1951.  (*Id.* ¶ 6.)  He became a United States citizen in 1986.  (*Id.* ¶ 8.)  Plaintiff originally worked for the USPS as a Maintenance Manager at the Toledo, Ohio Processing and Distribution Center.  (*Id.* ¶ 11.)  Since 2011, he has been working at the USPS Baltimore, Maryland Distribution Center as a Manager of Maintenance Operations.  (*Id.* ¶ 12.)  As of February, 2013, Plaintiff alleges he supervised a staff of approximately 55 workers.  (*Id.* ¶ 18.)  Plaintiff alleges that, since he began work with the USPS in 1988, he has never been charged with deficient performance and has always met USPS's legitimate performance expectations.  (*Id.* ¶ 17.)

I.      **Plaintiff's interactions with Mr. Nobles**

Plaintiff's allegations stem from various incidents and administrative complaints that began in 2013 relating to Plaintiff's interactions with his manager, Bennie Nobles.[2] On or about February 19, 2013, when Mr. Nobles first started working at the Baltimore USPS facility, all personnel gathered to meet Mr. Nobles. (*Id.* ¶¶ 40-49.) During that meeting, Prasad alleges that when he explained his job responsibilities, Mr. Nobles "sarcastically said, 'Is that all?'" and "mockingly shook his head and said, 'no, no, no, you are [a Manager of Maintenance Operations] and that is all you do.'" (*Id.* ¶¶ 45, 46.) Mr. Nobles then allegedly asked Plaintiff to leave the room while Mr. Nobles met with Plaintiff's staff. (*Id.* ¶ 48.)

On or about March 6, 2013, Mr. Nobles allegedly complained to Plaintiff about doing paper work, raised his voice and pointed his finger at Plaintiff, and told Plaintiff to sit down. (*Id.* ¶ 52.) Plaintiff contacted another supervisor about the incident who allegedly dismissed it as a misunderstanding. (*Id.*) The next day, Plaintiff alleges that Mr. Nobles, without notifying Plaintiff, requested a meeting with all Plaintiff's subordinates, an action that Mr. Nobles allegedly frequently took throughout 2013. (*Id.* ¶¶ 53, 54.)

On or about March 19, 2013, Mr. Nobles allegedly referred to Plaintiff as "Rag," instead of "Raj," in a meeting, which Plaintiff alleges was a pejorative reference to Plaintiff's national origin. (*Id.* ¶¶ 56, 57.) Plaintiff alleges that Mr. Nobles repeatedly referred to Plaintiff as "Rag" in facility-wide emails sent on March 19, 2013, March 26, 2013, March 29, 2013, April 26, 2013, July 6, 2013, July 9, 2013, September 6, 2013, and December 16, 2013. (*Id.*) On or about April 23, 2013, at an employee meeting, Mr. Nobles allegedly made noises while reading his own handwriting and stated that the noises were Arabic. (*Id.* ¶ 59.) On or about

---

[2] According to Plaintiff, Mr. Nobles has since passed away. (Pl.'s Opp'n at 6 n.2, ECF No. 38.)

September 9, 2013,[3] Mr. Nobles gave Plaintiff a written letter apologizing for calling Plaintiff

"Rag." (*Id.* ¶ 60.) In the letter, Mr. Nobles writes,

> During earlier correspondence that was emailed to you there was a misspelling of your name that appears to have brought great grievnce [sic] to you in a negative way. By no means was this error ment [sic] to cause you any harm, degragation [sic] or misrepresentation to your status as a manager or more importantly your heritage. During previous discussions with you and the Plant Manager, I have expressed that I made a mistake and feel extremely critical for my actions and would never present any material considereded [sic] to be damaging both openinly [sic] and knowingly to any fellow worker or other individual otherwise. That is not my nature and I express sound remorse if it was taken that way. If by any means you felt this was an attack on you in any manner, I appoligize [sic], for that was and is not the case.

(Nobles apology letter, ECF No. 33-9.[4]) Plaintiff alleges that Mr. Nobles continued to refer

to Plaintiff as "Rag" in subsequent emails. (Am. Compl. ¶ 60, ECF No. 30.)

On or about December 23, 2013, Mr. Nobles told Plaintiff he would be conducting a

pre-disciplinary interview for Plaintiff's failure to follow instructions. (*Id.* ¶ 62.) The following

day, Mr. Nobles allegedly handed Plaintiff a page of written questions, to which Plaintiff stated

that he would need time to respond. (*Id.* ¶ 63.) Nearly a year later, on or about October 21,

2014, Mr. Nobles presented Plaintiff another set of written questions to which he asked

Plaintiff to respond "on the spot." (*Id.* ¶ 64.) When Plaintiff did not respond, Mr. Nobles

allegedly "ran to the Human Resources office" and did not return. (*Id.* ¶ 65.)

---

[3] Plaintiff alleges that the letter was given to him on September 9, 2013, but the letter is dated September 18, 2013. (*See* ECF No. 33-9.)

[4] Defendants provided Mr. Nobles's apology letter, which the Court may consider as integral to the Complaint. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (the court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

On November 14, 2014 and November 21, 2014, Mr. Nobles allegedly reprimanded Plaintiff for unsatisfactory performance based on insufficient staffing.  (*Id.* ¶ 66.)   On December 3, 2014, Mr. Nobles conducted a pre-disciplinary interview with Plaintiff regarding an incident where an employee had failed to correct, or provide a "recovery plan" for, a maintenance failure within a piece of machinery.  (*Id.* ¶ 67.)  While Plaintiff was given a letter of warning for not providing a "recovery plan," he alleges that he was on leave at the time of this failure and could not have been responsible for the issue.  (*Id.* ¶¶ 67, 68.)  On or about January 7, 2015, Mr. Nobles allegedly gave Plaintiff a letter of warning dated December 23, 2014 for unsatisfactory work performance, in addition to a letter informing Plaintiff that his work shift was going to change from the 7:00 a.m. to 3:30 p.m. shift to the 3:00 p.m. to 11:30 p.m. shift.  (*Id.* ¶¶ 71, 114.)  Plaintiff alleges that this shift change was not reflected within the USPS record system, denying Plaintiff a night premium for hours worked between 6:00 p.m. and 11:30 p.m.  (*Id.* ¶ 119.)  Plaintiff also alleges that he was the only employee denied a two percent increase for USPS employees in the Capital Metro Area, a "Pay for Performance" raise ("PFP raise").  When Plaintiff asked Mr. Nobles and another supervisor why he had not received the PFP raise, they denied having any knowledge about it.  (*Id.* ¶ 126.)  When Plaintiff contacted Human Resources, it corrected the situation and paid Plaintiff the PFP raise.  (*Id.* ¶ 127.)

## II.   Plaintiff's interactions with other managers

Plaintiff also alleges that other managers discriminated against him on a variety of occasions, including communicating directly with and, on some occasions, disciplining Plaintiff's subordinates without consulting Plaintiff.  (*Id.* ¶¶ 139-150.)  He also alleges that

other employees' "temper tantrums" were tolerated by management, but that Plaintiff was reprimanded "on the slightest pretext." (*Id.* ¶ 152.)  On or about March 3, 2018, Plaintiff alleges that one of the managers, Mr. Wheeler, made a suggestive remark about Plaintiff's height.  (*Id.* ¶ 151.)  In addition, he generally alleges that another manager "routinely makes false, malicious, ignorant, negative comments about plaintiff, broadcast over the radio at the facility." (*Id.* ¶ 153.)

On June 1, 2018, Mr. Wheeler issued a letter of concern to Plaintiff regarding Plaintiff's lack of progress in his "Program Evaluation Guide" scores and Plaintiff's failure to provide weekly progress reports as requested.  (*Id.* ¶ 155; June 1, 2018 Letter of Concern, ECF No. 30-4.)  Plaintiff alleges that he was the only Manager of Maintenance Operations to have received such a letter. (Am. Compl. ¶ 155, ECF No. 30.)  On July 25, 2018, Plaintiff submitted a request for leave for 40 hours and Mr. Wheeler disapproved because "MAX II managers already on leave." (*Id.* ¶ 158; Leave request, ECF No. 30-1.)  When Plaintiff challenged the denial to Human Resources based on his seniority over others who had been granted leave, Human Resources personnel allegedly agreed that Plaintiff was entitled to leave.  (Am. Compl. ¶¶ 159-160, ECF No. 30.)

On several occasions between approximately 2018 and 2019, when Mr. Wheeler would be out of the office, he announced that another manager would serve as Acting Maintenance Manager in Mr. Wheeler's place.  (*Id.* ¶¶ 173-181; August 3, 2018 email, ECF No. 30-5, September 7, 2018 email, ECF No. 30-6.)  Plaintiff alleges that he was never asked to serve as Acting Maintenance Manager on these occasions because of his race, age, religion, and national origin. (Am. Compl. ¶ 181, ECF No. 30.)  On the one occasion where Plaintiff was asked to

serve as Acting Maintenance Manager, he alleges that Mr. Wheeler did not ensure that Plaintiff received the corresponding higher pay for that position.  (*Id.* ¶ 176.)

Plaintiff alleges that throughout his tenure at the USPS, he has been consistently overlooked, ignored, and bypassed for any promotional opportunities.  (*Id.* ¶ 79.)  He alleges that he applied for the position of Maintenance Manager but that a younger, white male, with an "executive administrative schedule" number of 22, was selected for the job.  (*Id.* ¶¶ 105-107.)  Plaintiff does not identify when he applied for this position nor does he provide the job's qualifications.  He alleges that he subsequently applied for four different Maintenance Manager positions in Texas on December 4, 2018, December 10, 2018, and April 17, 2019.  (*Id.* ¶ 165.)  Plaintiff generally asserts that all four positions were filled by "Caucasian selectees no more qualified than plaintiff."  (*Id.* ¶ 167.)

### III.   Plaintiff's administrative complaints[5]

Beginning in 2013, Plaintiff has filed a series of administrative complaints based on the above alleged incidents.[6]  On July 15, 2013, Plaintiff filed an administrative Equal Employment Opportunity ("EEO") complaint alleging that Mr. Nobles discriminated against him by making negative remarks to him on several dates, spelling his name "Rag" instead of "Raj," communicating with other personnel and not including Plaintiff, and instructing Plaintiff to stay after work on certain occasions.  (*See* September 25, 2018 Final Agency Decision, ECF

---

[5] The Court may consider Plaintiff's administrative complaints and the corresponding agency decisions as they are integral to Plaintiff's Amended Complaint.  (*See* Am. Compl. ¶ 136, ECF No. 30 ("[D]efendant USPS ruled against plaintiff's administrative claims").)

[6] In Maryland, a deferral state, a claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") must be filed with the EEOC within 300 days of the alleged discriminatory action.  *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001).  If the EEOC dismisses the charge, or if the plaintiff requests a right to sue notice, a plaintiff has ninety days from receiving his or her notice of dismissal and right to sue letter to file an action in court.  42 U.S.C. § 2000e-5(f)(1).

No. 33-2.)  On March 2, 2015, Plaintiff filed a second EEO complaint alleging that Mr. Nobles assigned him a different shift, Plaintiff was issued a letter of warning for unsatisfactory performance, and Plaintiff was denied a pay increase.  (*Id.*)  On December 18, 2015, Plaintiff filed another EEO complaint alleging that USPS inappropriately revoked his access card and that his scheduled reporting time had been changed.  (December 18, 2015 EEO Complaint, ECF No. 38-25.)

These three EEO complaints were consolidated into one hearing before an EEOC Administrative Judge.  (September 25, 2018 Final Agency Decision, ECF No. 33-2.)  Before the scheduled hearing, Plaintiff withdrew his request for a hearing and requested a Final Agency Decision.  (*Id.* at 3.)  On September 25, 2018, Defendant USPS issued a Final Agency Decision, finding that Plaintiff had failed to establish discrimination.  (*Id.*)

Plaintiff also filed two additional EEO complaints for which Defendant USPS issued separate Final Agency Decisions.[7]  On April 3, 2014, Plaintiff filed an EEO complaint alleging that Mr. Nobles referred to Plaintiff as "Rag" in emails, Mr. Nobles communicated directly to Plaintiff's subordinates instead of through Plaintiff, and that the facility manager told Plaintiff his complaints about Mr. Nobles were based on "personality differences."  (*See* August 15, 2014 Final Agency Decision, ECF No. 33-3.)  Defendant USPS issued a Final Agency Decision on August 15, 2014 finding no discrimination.  (*Id.*)  On or about August 3, 2018, Plaintiff filed another EEO complaint alleging that his supervisors wrongly denied his leave requests;

---

[7] Defendant identifies yet another EEO complaint that Plaintiff allegedly filed on July 25, 2015 (Agency No. 1K-211-0025-15).  (Def.'s Mot. at 5, ECF No. 33-1.)  However, Defendant does not provide documentation of that complaint or the related Final Agency Decision nor does Plaintiff make any allegations concerning that complaint.  Accordingly, the Court will not consider Defendant's discussion of the July 25, 2015 complaint.

his supervisors gave him bad references; his supervisor made a negative comment about his height; he was not given the opportunity to be the Acting Maintenance Manager; he was not chosen as Chairperson for a review committee; and he was not given the opportunity to be the Acting Maintenance Manager while the manager was away for training.  (August 2018 EEO complaint at 3-4, ECF No. 38-26.)  On July 18, 2019, Defendant USPS issued a Final Agency Decision, finding no discrimination.  (July 18, 2019 Final Agency Decision, ECF No. 33-5; Am. Compl. ¶ 136, ECF No. 30.)   None of Plaintiff's EEO complaints include allegations about non-selection or a failure to promote.

Plaintiff alleges that two of his superiors, Mr. Wheeler and Ms. Joyner, were aware of his EEO activity. (Am. Compl. ¶ 183, ECF No. 30.)  He alleges that, since the July 18, 2019 Final Agency Decision, Mr. Wheeler and Ms. Joyner have consistently communicated with Plaintiff's subordinates out of Plaintiff's presence.  (*Id.* ¶ 139.)

Prasad filed a Complaint in this Court on December 20, 2018.  (ECF No. 1.) Defendant filed a Motion to Dismiss or, Alternatively, for Summary Judgment on June 6, 2019.  (ECF No. 17.)  On September 23, 2019, Prasad moved to amend his Complaint (ECF No. 27), which this Court granted on October 10, 2019 (ECF No. 28).  Prasad filed the operative Amended Complaint on October 10, 2019.  (ECF No. 30.)  On January 14, 2020, this Court found as moot Defendant's original Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 17).  (ECF No. 29.)  On April 26, 2020, Defendant filed the presently pending Motion to Dismiss Plaintiff's Amended Complaint or, Alternatively, for Summary Judgment.  (ECF No. 33.)

**STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

10

**ANALYSIS**

Prasad has asserted a total of eight Counts[8] against Defendant USPS for race, religion, national origin, and age discrimination, which the Court will consider as four theories of employment discrimination.  First, Prasad asserts that he was subjected to a hostile work environment (Counts I and V).  Second, he asserts Defendant failed to promote him (Counts II and VI).  Third, he asserts that he was subjected to disparate treatment by his supervisors (Counts III and VII).  Fourth and finally, he asserts that he was retaliated against because of his protected Equal Employment Opportunity activity (Counts IV and VIII).

## I.      Hostile Work Environment (Counts I and V)

To establish a *prima facie* case for a hostile work environment, a plaintiff must demonstrate that: "(1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).  In weighing whether conduct was sufficiently "severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

---

[8] Prasad's Amended Complaint adds four Counts, which respectively track his first four Counts. Accordingly, the Court will review them in tandem as follows: Counts I and V (hostile work environment); Counts II and VI (failure to promote); Counts III and VII (disparate treatment other than failure to promote); and Counts IV and VIII (retaliation).

The United States Court of Appeals for the Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  The Fourth Circuit has recognized that,

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.  Some rolling with the punches is a fact of workplace life.  Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Id.* at 315-16 (quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

Prasad's factual allegations are insufficient to "raise a right to relief above the speculative level." *McLeary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).  Prasad alleges sporadic incidents, none of which were physically threatening, and none of which were extremely serious.  (*See* Am. Compl. ¶ 73, ECF No. 30.)   He asserts that: his supervisors communicated with his subordinates outside his presence (*id.* ¶¶ 48, 53, 54, 139-150); Mr. Nobles raised his voice and pointed his finger at Plaintiff on one occasion (*id.* ¶ 52); Plaintiff was subjected to pre-disciplinary interviews and issued disciplinary letters for his unsatisfactory work performance (*id.* ¶¶ 62- 71, 114); Mr. Nobles changed Plaintiff's shift (*id.* ¶¶ 114, 119); a manager made a suggestive remark about Plaintiff's height (*id.* ¶ 151); Plaintiff was given impossible work assignments (*id.* ¶ 73); Plaintiff experienced "insulting verbal rebukes and insults," which he does not specify (*id.*); Plaintiff was not allowed office time to prepare his EEO documents

(*id.*); Defendant generally did not recognize the proper chain of command within the USPS facility (*id.*); and Mr. Nobles would refer to Plaintiff as "Rag" in multiple emails, for which Mr. Nobles apologized (*id.* ¶¶ 56-60; Nobles apology letter, ECF No. 33-9).

The only allegation that implicates any potentially discriminatory conduct is that Mr. Nobles referred to Prasad as "Rag" instead of "Raj" in an email, which Prasad alleges was intended in its pejorative use for persons of Near-Eastern or Middle Eastern descent. (*Id.* ¶ 57.)  However, this discrete misspelling of Plaintiff's name does not describe harassment that is severe or pervasive enough to plausibly allege an objectively hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (recognizing the "ordinary tribulations of the workplace, such as the sporadic use of abusive language" and emphasizing "that conduct must be extreme to amount to a change in the terms and conditions of employment"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (hostile work environment where African-American plaintiff continuously exposed to racist comments about African Americans by his supervisor, including the use of the n-word); *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (hostile work environment where Iranian plaintiff called "local terrorist" on daily basis); *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 754 (D. Md. 2002) ("the basis of plaintiff's harassment claims rests upon a handful of unkind remarks, misunderstandings, and accidents…their severity is undoubtedly minimal").

Indeed, Prasad's own allegations acknowledge that Mr. Nobles apologized for his misspelling of Prasad's name.  (Am. Compl. ¶ 60, ECF No. 30.)  There is absolutely no indication, aside from Prasad's own subjective belief, that Mr. Nobles referred to Prasad as "Rag" for any reason other than a typographical error.  This error is simply not enough to

allege a hostile work environment.  Finally, Plaintiff's allegation that he was subjected to "unjustified and insulting rebukes and insults" does not salvage this claim because Plaintiff does not identify the rebukes or insults, nor does he allege they were in any way related to his race, religion, national origin, and age.  (*See* Am. Compl. ¶ 73, ECF No. 30.)  Accordingly, Prasad's hostile work environment claim will be dismissed with prejudice.

## II.     Failure to Promote (Counts II and VI)

Plaintiff's failure to promote claim rests on his assertion that he was denied the opportunity for a higher position at the USPS facility.  However, Plaintiff's EEO complaints do not allege any failure to promote claim.  As such, Plaintiff has not exhausted his administrative remedies on this claim.  Even if he had exhausted his remedies, Plaintiff does not state a claim for failure to promote.

### A. Plaintiff failed to exhaust his administrative remedies as to a failure to promote claim.

Prior to filing a Title VII claim, in federal court, "a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC."  *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000).  If timely raised by the defendant, a plaintiff's failure to exhaust administrative remedies warrants dismissal under Rule 12(b)(6) of the Federal Rules.  *See, e.g., Stewart v. Iancu*, 912 F.3d 693, 701-02 (4th Cir. 2019); *see also Carter v. Montgomery Cty.*, TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019) (construing motion to dismiss under Rule 12(b)(1) for failure to exhaust administrative remedies as a motion to dismiss under Rule 12(b)(6) in light of the Supreme Court's decision in *Fort Bend Cty v. Davis*, 139 S. Ct. 1843, 1846 (2019)).  The exhaustion requirement ensures that the charged party receives notice of the claims it faces. *Chacko v. Patuxent Institution*, 429 F.3d 505,

510 (4th Cir. 2005).  A subsequent lawsuit must then limit its claims to those included in the administrative charge and those "reasonably related" to the claims described in the administrative charge.  *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).

None of the EEO complaints provided to the Court allege a failure to promote claim. Plaintiff argues that his complaints included allegations of Defendant "not providing the same opportunities that is [sic] provide to other lower level manager brought in from other facilities" (December 18, 2015 EEO complaint, ECF No. 38-25), and that Defendant "prevent[ed] [him] from advancing in every possible way" and "depriv[ed] [him] of the opportunities for upward mobility" (August 2018 EEO complaint at 2-5, ECF No. 38-26).  These allegations do not constitute the assertion of a failure to promote claim.  A failure to promote claim requires a "discrete act of discrimination," and a plaintiff must exhaust his administrative remedies "for that particular act."  *Thuy-Ai Nguyen v. Mnuchin*, Civil Action No. 8:18-cv-00492-PX, 2019 WL 2270690, at * 6 (D. Md. May 28, 2019) (citing *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007)); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004).

While Plaintiff asserts in his Amended Complaint that he applied for a Maintenance Manager position and four positions in Texas which he did not get (Am. Compl. ¶¶ 105-107, 165, ECF No. 30), his EEO complaints are devoid of such allegations. Accordingly, Plaintiff failed to exhaust his administrative remedies as to Counts II and VI alleging failure to promote.

## B. Even if Plaintiff had exhausted his remedies, he fails to state a claim for failure to promote.

To establish a prima facie case of discrimination for failure to promote, a plaintiff must prove by a preponderance of the evidence that she (1) belongs to a protected group; (2) applied

for the positions at issue; (3) was qualified for those positions; and (4) was rejected under circumstances that give rise to an inference of unlawful discrimination. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996).

In his Amended Complaint, the only discrete events for which Prasad could assert a failure to promote are his application for a position as Maintenance Manager in Baltimore and his application for four positions in Texas for which he was not selected.[9]  (Am. Compl ¶¶ 105-107, 165, ECF No. 30.)  Plaintiff's allegations about these positions are insufficient to state a claim for failure to promote.

As to the Maintenance Manager position, Plaintiff alleges that Mr. Wheeler, a Caucasian whom Plaintiff "believes…is younger than plaintiff," was the successful candidate.  (*Id.* ¶¶ 105-107.)  Plaintiff alleges nothing about his own qualifications for the position nor does he allege any facts that show his application was rejected for unlawful reasons.  Nor does he identify any of the qualifications of the chosen candidate, Mr. Wheeler, that would lead to a reasonable inference that Plaintiff's candidacy was rejected for discriminatory reasons. Plaintiff's allegations as to the four positions in Texas are likewise devoid as Plaintiff does not identify the candidates chosen for those positions beyond stating they were "Caucasian selectees no more qualified than plaintiff."  (Am. Compl. ¶ 167, ECF No. 30.)  These allegations are insufficient to state a claim.  *See McCleary-Evans v. Md. DOT*, 780 F.3d 582, 586 (4th Cir. 2015) (holding allegations that chosen candidate was outside protected class was not enough); *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992) ("'[T]he employer has discretion to

---

[9]While Prasad also makes allegations about his supervisors' failure to select him to serve as Acting Maintenance Manager when the supervisors were away, Prasad states that he is not offering these allegations to support his failure to promote claim.  (*See* Pl.'s Opp'n at 15, ECF No. 38.)

choose among equally qualified candidates provided the decision is not based upon unlawful criteria.'" (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  As a result, Plaintiff has failed to state an actionable failure to promote claim under Title VII.  Accordingly, this claim is dismissed with prejudice.

## III.    Disparate Treatment Other than Failure to Promote (Counts III and VII)

As the United States Court of Appeals for the Fourth Circuit explained in *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745 (4th Cir. 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Swaso*, 698 F. App'x. at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)).  Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first make out a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'"  *Id.* (quoting *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

The standard is the same under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*  The ADEA "protect[s] a relatively old worker from

discrimination that works to the advantage of the relatively young." *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 591, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). In order to allege a *prima facie* case of age discrimination under the ADEA, a plaintiff must assert that she (1) is a member of the protected class, *i.e.* is at least 40 years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) was replaced by or treated less favorably than someone who is either outside the protected class or "substantially younger" than she is. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

Prasad has failed to identify an adverse employment action as required by *McDonnell Douglas*. An adverse action necessary to support a discrimination claim is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (quoting *Hoyle v. Freightliner, LLC*, 659 F.3d 321, 337 (4th Cir. 2011)). Here, Prasad alleges that he received letters of warning, was subject to pre-disciplinary interviews, had his shift changed, and was temporarily denied a pay increase. (Am. Compl. ¶¶ 62-68, 71, 79, 114-117, 121, ECF No. 30.) The warning letters and disciplinary meetings cannot amount to adverse action because they did not result in a significant change to Prasad's employment status, salary, or benefits. *See Finnegan v. Dep't of Pub. Safety and Corr. Servs.*, 184 F. Supp. 2d 457, 461 (D. Md. 2002) (plaintiff failed to state a claim because "verbal reprimands or counseling letter" was not adverse action). Nor does Prasad's shift change constitute an adverse employment action. *See Darnell v. Tyson Foods, Inc.*,

536 Fed. App'x 366, 470 (4th Cir. 2013) ("the change in [shift] time, without any change to [plaintiff's] terms and conditions of employment, does not constitute an adverse employment action"). Finally, Plaintiff's allegation that he was denied a pay increase is likewise insufficient because he alleges that he was ultimately paid the appropriate amount. (*See* Am. Compl. ¶ 127.) In sum, Plaintiff does not identify any adverse employment action taken against him. Indeed, as of the filing of his Complaint in this Court, Prasad still works at the USPS. (*Id.* ¶ 12 ("Plaintiff is currently a grade EAS-23…at the USPS Baltimore Distribution Center").) Accordingly, Prasad's claims of discrimination under Title VII and the ADEA for disparate treatment must be dismissed with prejudice.

## IV.     Retaliation (Counts IV and VIII)

The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). A protected activity may fall into two categories, opposition and participation. 42 U.S.C. § 2000e-3(a). The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. *Id.* As for the opposition clause, the Fourth Circuit has held that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints … about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543-55 (4th Cir. 2003)).

Prasad sufficiently alleges protected activity by his filing multiple Equal Employment Opportunity ("EEO") complaints for discrimination against his supervisors.  (Am. Compl. ¶¶ 136, 183, ECF No. 30.)  However, as explained above, Prasad does not allege any adverse employment action.  According to the record in this case, Prasad still works at the USPS and does not allege that he has experienced any change in employment, salary, or benefits based on his protected activity.  Even if Prasad had experienced an adverse employment action, the Amended Complaint does not sufficiently allege a causal link between his protected activity and any such action.  This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity."  *Cepada v. Bd. of Educ. of Baltimore County*, 814 F. Supp. 2d 500, 515 (D. Md. 2011).  Such presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element).  The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close."  *Pascaul v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006).  However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus."  *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

The Amended Complaint fails to allege any such retaliatory animus by any of Prasad's supervisors.  Moreover, Prasad does not allege when Defendant even had notice of his EEO filings.  As a result, such allegations do not sufficiently allege any temporal proximity between

Prasad's filing of his EEO complaints and any adverse employment action.  Such deficiencies are fatal to Prasad's retaliation claim.  Accordingly, his claim for retaliation under Counts IV and VIII will also be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, Alternatively, for Summary Judgment (ECF No. 33), treated as a Motion to Dismiss, is GRANTED.   Plaintiff's Amended Complaint (ECF No. 30) is DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated: September 16, 2020


_____/s/_____
Richard D. Bennett
United States District Judge